## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | } | |
| | } | |
| TIMOTHY D. SHELTON | } | CASE NO. 07-81534-JAC-7 |
| SSN: XXX-XX-8676 | } | |
| | } | CHAPTER 7 |
| Debtor(s). | } | |
| | | |
| TIMOTHY D. SHELTON | } | A.P. No. 10-80001-JAC-7 |
| | } | |
| Plaintiff(s), | } | |
| v. | } | |
| | } | |
| LAUDERDALE COUNTY TEACHERS | } | |
| CREDIT UNION, STEVEN MORTON, JR., | } | |
| ROBERT ALAN TRIMM, SHIRLEY ISBELL, | } | |
| SHERRY FAULKS, JAMES C. JOHNSON, | } | |
| ANNIE SUGGS, ECKARD WALKER, | } | |
| AMBER CORUM, MIKE THORTON, | } | |
| PHILLIP COSBY and COSBY FAB, LLC, | } | |
| POUNDERS & ASSOCIATES, XI, LLC, | } | |
| A & A PROPERTIES, GARY W. BENTLEY, | } | |
| HLH ROGERSVILLE, LLC, COLD WATER | } | |
| VALLEY, LLC, | } | |
| Defendant(s). | } | |

## MEMORANDUM OPINION

This is an action brought by the debtor against Lauderdale County Teachers Credit Union ("LCTCU"), various officers and directors of LCTCU, Steven Morton, Jr., Esq., ("Morton"), and various purchasers of the debtor's property from LCTCU after the credit union obtained relief from the stay to proceed with its rights and remedies under State law against various parcels of real property and personal property securing a debt of the debtor to LCTCU. The debtor asserts various prepetition causes of action against LCTCU, the

director defendants, and Morton. The debtor alleges that LCTCU made nineteen $350,000.00 illegal loans to the debtor as a co-signor or co-borrower with various family members and friends throughout 2003, 2004 and early 2005. The debtor alleges that LCTCU, the director defendants, and Morton then used threats and deception to obtain all of the debtor's personal and real property as collateral for these loans. Specifically, the debtor alleges that on April 29, 2005, Morton, while acting as counsel for debtor, presented the debtor with approximately 10 mortgages and 3 promissory notes pledging all his unencumbered real and personal property to the LCTCU as additional collateral for the nineteen co-borrower loans. The debtor states several prepetition causes of action against Morton including legal malpractice and civil theft. The debtor further states a postpetition cause of action against LCTCU, the director defendants and Morton for malicious prosecution and wanton conduct relating to various federal criminal charges that were brought against the debtor for bank fraud, conspiracy, and making false statements. Finally, the debtor seeks recovery of his unique real and personal property from various defendants who purchased the property from LCTCU after the credit union purchased the property at the various foreclosure sales.

This case is now before the Court on four separate motions to dismiss filed by: (1) LCTCU, Robert Alan Trimm ("Trimm"), Shirly Isbell ("Isbell"), Sherry Fulks ("Fulks"), James C. Johnson ("Johnson"), Annie Suggs ("Suggs") and Eckart Walker ("Walker")(collectively LCTCU and the "director defendants"); (2) defendant, Morton; (3) purchaser defendant, Gary W. Bentley; and (4) purchaser defendant, Mike Thorton.

2

After careful review of the pleadings, the Court finds as follows: (1) the motions filed by LCTCU, the director defendants, and Morton are due to be granted with respect to each of the debtor's prepetition claims asserted against these defendants based on judicial estoppel; and (2) the complaint is due to be dismissed against defendants Bentley and Thorton and all other purchaser defendants on the grounds that same are bona fide purchasers for value. The Court will abstain from deciding debtor's postpetition claims for malicious prosecution against LCTCU, the director defendants, and Morton.

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires courts to dismiss a cause of action if, as a matter of law, a plaintiff has failed to state a claim for which relief may be granted. In ruling on a motion to dismiss, courts must accept a complaint's allegations as true and construe them in the light most favorable to the plaintiff. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). In order to survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). Under this standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and it is not sufficient that the pleadings merely leave "open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 1965, 1968.

## PROCEDURAL HISTORY AND BACKGROUND

3

1. On June 16, 2007, the debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Although the debtor did not list any real property in his initial schedules, the debtor listed LCTCU as a secured creditor in Schedule D-Creditors Holding Secured Claims. The debtor did not list a cause of action against the credit union nor the director defendants anywhere in his bankruptcy schedules.

2. On June 22, 2007, Morton filed a motion on behalf of LCTCU for relief from stay to proceed against certain real property securing a debt of the debtor to LCTCU.

3. On July 9, 2007, the debtor amended his schedules to show additional real and personal property and to add additional creditors. The debtor did not list a cause of action against the credit union nor the director defendants in his amended schedules.

4. On July 10, 2007, the Court held a hearing on LCTCU's motion to lift stay. The debtor appeared at the hearing along with his attorney, Kevin Heard, Esq., and counsel for the debtor announced on the record that the debtor consented to the motion. On July 11, 2007, the Court entered an agreed order lifting the stay in favor of LCTCU on two parcels of property located on 265 County Road 592.

5. On July 16, 2007, Morton, on behalf of LCTCU, filed a motion to convert the debtor's case to Chapter 7.

6. On July 17, 2007, the debtor amended his schedules, but failed to list a cause of action against any of the defendants as an asset of this estate.

7. On July 27, 2007, the Court entered an order appointing Tazewell Shepard as the debtor's Chapter 11 trustee.

8. On August 16, 2007, the debtor amended his schedules to include potential claims against Danley Oil Company and the Elmer Danley estate as an asset, but the debtor did not list any potential claims against any of the defendants in this lawsuit.

9. On August 30, 2007, Tazewell Shepard filed a motion to convert the case to Chapter 7 which the Court granted on September 7, 2007.

10. On November 9, 2007, the debtor amended his schedules for the fourth and final time. The debtor did not list a cause of action or potential claims against the defendants in this final amendment.

11. On December 4, 2007, LCTCU filed a discharge and dischargeability complaint against the debtor pursuant to §§ 523(a)(2), 523(a)(6), 523(a)(19), 727(a)(2), 727(a)(3), 727(a)(4), and 727(a)(5), case no. 07-80130-JAC-7.

12. On February 19, 2008, LCTCU filed another motion to lift the stay to proceed against additional real and personal property. On March 18, 2008, the Court entered an order granting the credit union's motion and lifting the stay on various parcels of real property and personal property for LCTCU to proceed against and/or dispose of the property as allowed under the laws of the State of Alabama.

13. After the Court lifted the stay for LCTCU to proceed against the debtor's property, Morton advertised various parcels of real and personal property to be sold at foreclosure and conducted the foreclosure sales of same. LCTCU was the high bidder at the foreclosure sales. Following the sales, Morton executed foreclosure deeds to LCTCU and

recorded same. Subsequently, LCTCU sold the various parcels of real property to the purchaser defendants giving same Statutory Warranty deeds.

14. On November 25, 2008, the debtor and Melissa Killen, a LCTCU loan officer, were indicted by a Federal Grand Jury on 13 counts of Federal Credit Union Fraud. In January of 2009, the criminal trial judge directed verdict on all charges against Killen and all but four against the debtor. At the close of the case, the jury acquitted the debtor on the remaining charges. It was during the criminal trial in January of 2009, that the debtor alleges that he first discovered the claims of fraud, theft, extortion, malicious prosecution and other claims that he has now brought against the defendants in this complaint. The debtor has never amended his schedules to list these claims as an asset in this bankruptcy case.

15. Subsequent to the debtor's acquittal in the criminal trial, this Court entered an order on April 22, 2009, denying LCTCU's motion for summary judgment in the credit union's discharge and dischargeability complaint against the debtor. On May 27, 2009, the Court entered a pretrial order setting the complaint for trial to begin on June 22, 2009. On the date of the trial, Morton, appearing on behalf of LCTCU, and Robert J. Solomon, Esq., appearing on behalf of the debtor, announced that the parties had settled the adversary proceeding and read the terms of the settlement into the record. The Court approved the settlement in open court. Because the terms of the settlement were to be kept confidential, the parties sought leave to prepare and enter into a confidential judgment that would only be recorded in the event of default. The Court has subsequently learned that the parties failed

6

to prepare the judgment following the June 22, 2009 hearing leaving that complaint unresolved.

16. Approximately five months later, on December 2, 2009, the debtor filed this lawsuit against the defendants in the Circuit Court of Lauderdale County, Alabama. On January 6, 2010, the case was removed to this Court pursuant to 28 U.S.C. § 1452 and Bankruptcy Rule 9027. The Court hereby accepts the facts alleged in the debtor's amended complaint as true and construes same in the light most favorable to the debtor.

## DISCUSSION

### A. The doctrine of judicial estoppel bars all prepetition claims asserted by the debtor against LCTCU, the director defendants and Morton.

Under the doctrine of judicial estoppel, "a party is precluded from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."[1] The Eleventh Circuit has explained that "[t]he purpose of the doctrine, is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."[2]

In *Burnes v. Pemco Aeroplex, Inc. (In re Burnes),* 291 F.3d 1282, 1285 (11th Cir. 2002), the Eleventh Circuit stated that two factors should be considered before invoking judicial estoppel: (1) "it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding;" and (2) "such inconsistencies must be shown to have been

---

[1] *Burnes v. Pemco Aeroplex, Inc. (In re Burnes),* 291 F.3d 1282, 1285 (11th Cir. 2002).

[2] *Id.*

7

calculated to make a mockery of the judicial system." In *Burnes,* the Eleventh Circuit found that the evidence was sufficient to find that the Chapter 7 debtor's failure to disclose his employment discrimination claim in his concurrent bankruptcy proceeding was intentional where the debtor filed an employment discrimination suit while his bankruptcy case was pending and failed to amend his bankruptcy schedules to disclose same. The Court explained that "[a] debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court."[3]

In *De Leon v. Comcar Industries, Ajaka v. BrooksAmerica Mortgage Corp.,* 453 1339 (11th Cir. 2006), the Eleventh Circuit "held that failure to timely amend a Chapter 13 reorganization plan to reflect a pending claim while simultaneously pursuing that claim in another court of law constitutes inconsistent positions under oath."[4] Most recently in *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269 (11th Cir. 2010), the Eleventh Circuit held that the doctrine of judicial estoppel barred a Chapter 13 debtor's employment discrimination action which the debtor filed while her Chapter 13 case was pending without disclosing the cause of action in her schedules.

In the case before the Court, all of the debtor's claims against the defendants (with the exception of malicious prosecution and wantonness) relate back to the circumstances surrounding the nineteen prepetition co-borrow loans LCTCU made to the debtor and to the subsequent actions Morton took on April 29, 2005 to collateralize those loans (whether

---

[3] *Id.* at 1286.

[4] *Robinson v. Tyson Foods, Inc.,* 595 F.3d 1269 (11th Cir. 2010)(summarizing *In re Ajaka*).

8

acting as the debtor's attorney or counsel for LCTCU). The debtor argues that he did not become aware of his claims until January of 2009 during his criminal trial. The debtor, who is now represented by Keith Pope, Esq., argues that his former bankruptcy attorney Robert Solomon, Esq., and the trustee's attorney, Kevin Morris, Esq., should have investigated and pursued claims against LCTCU and Morton after the trial, but failed to do so. The debtor further argues that it was not realistic to expect his former bankruptcy attorney who was not a civil litigator of complex litigation to raise the present issues when neither Solomon nor the debtor had the resources to investigate and pursue claims.

Regardless of whether the debtor had the funds to investigate his claims against the defendants in January of 2009, the debtor failed to amend his schedules to disclose the claims despite the fact that he admittedly became aware that he had potential causes of action against the defendants during his criminal trial. As the Eleventh Circuit has explained, the debtor's duty to disclose is a continuing duty "that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change."[5] If a debtor's circumstances change post-petition, the debtor must amend his schedules to reflect the change. In this case, the debtor admittedly became aware of any alleged wrongdoing by LCTCU, the director defendants and Morton by at least January 22, 2009 during his criminal trial, if not earlier, but the debtor never amended his schedules to list any potential claims against these defendants. As for the debtor's assertion or innuendo that his former attorney was not capable of investigating these claims, the Eleventh Circuit

---

[5] *Id.*

9

has rejected the argument that a debtor's failure to disclose an asset can be blamed on the debtor's attorney.[6]

The debtor had numerous opportunities in this case to disclose his potential claims against the defendants. On Schedule B. Personal Property, in response to question 21, "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each," the debtor only listed a potential claims against Danley Oil Company and the Elmer Danley Estate. The debtor never amended his schedules to include the claims asserted in this cause of action against the defendants. Although the debtor amended his schedules on four separate occasions, he failed to amend his schedules after the debtor admits that he became aware of his potential claims against the defendants in January of 2009.

Rather than disclosing his claims against LCTCU, the director defendants, and Morton the debtor proceeded to trial in this Court on June 22, 2009 on LCTCU's discharge and dischargeability complaint and announced through counsel that he had entered into a confidential settlement with LCTCU. This Court had set that day and additional days aside for the trial. Had LCTCU, the director defendants, or counsel for LCTCU, Morton, known that the debtor had potential claims against same that he would be asserting in state court within the next five months, it is difficult to imagine that LCTCU would have agreed to enter

---

[6] *Barger v. City of Cartersville (In re Barger)*, 348 F.3d 1289 (11 Cir. 2003)("Although it is undisputed that Barger's attorney failed to list Barger's discrimination suit on the schedule of assets despite the fact that Barger specifically told him about the suit, the attorney's omission is no panacea. . . . .Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.").

10

into the proposed settlement.  Instead, it is very likely that LCTCU would have instead insisted that the trial proceed as scheduled.   Additionally, the debtor voluntarily consented to the lifting of the stay in this case to allow LCTCU to proceed with foreclosure as to the collateral securing its loans in orders dated July 11, 2007 and May 28, 2008. By consenting to relief from the stay before the criminal trial and subsequently announcing a purported settlement resolving the pending adversary proceeding against the debtor five months after the debtor learned of his claims against the defendants in the criminal trial, the debtor represented to this Court in prior proceedings under oath that he did not have any counterclaims against LCTCU related to the underlying debt subject to both the motions to lift the stay and LCTCU's complaint against the debtor.

Additionally, by failing to amend his schedules to include the potential causes of action against LCTCU, the director defendants, and Morton after the debtor admittedly became aware of same in January of 2009, the debtor represented that he had no legal claims to this court.  As the Eleventh Circuit explained in *Robinson*, when a debtor submits his bankruptcy schedules under oath, the debtor also submits that he will update those schedules as required.[7]   Therefore when a debtor files a lawsuit, the debtor has a "sworn duty to disclose that suit to her bankruptcy estate."[8] By failing to update the bankruptcy schedules while simultaneously pursuing legal claims in another court, "[t]hese actions, both taken under oath, are clearly inconsistent." Therefore, in accordance with *Robinson,* the debtor has

---

[7]   *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1275 (11th Cir. 2010).

[8]   *Id.*

11

now taken an inconsistent position by filing a lawsuit against the defendants in the Circuit Court of Lauderdale County, Alabama while his bankruptcy case was still pending without disclosing those claims to this Court and to the debtor's creditors.

With regard to the second element required for judicial estoppel, mockery of the judicial system, the debtor's actions easily satisfy the Eleventh Circuit's test for determining whether judicial estoppel should be invoked because the debtor clearly had a motive to conceal these claims. The debtor filed the subject claims in state court without disclosing the claims to this Court or his creditors, or his Chapter 7 trustee while this case was still pending. Indeed, this case has been pending since June of 2007 and there has been copious litigation in this case since the day it was filed. Yet, rather than disclose this cause of action to the Court, the debtor filed this complaint in the Circuit Court of Lauderdale County, Alabama and never amended his schedules to add the cause of action as an asset in this case. In fact, after the complaint was removed to this Court, rather than file a belated amendment to his schedules, the debtor instead choose to file a motion to convert this case to Chapter 11. Alternatively the debtor argued that the entire case should be dismissed because the debtor asserts that he was never insolvent if this Court finds that LCTCU's loans were illegal.

In *Robinson v. Tyson Foods, Inc.,* 595 F.3d 1269 (11th Cir. 2010), the Eleventh Circuit wrote:

> When considering a party's intent for the purpose of judicial estoppel, we require 'intentional contradictions, not simple error or inadvertence.' *Am. Nat'l Bank of Jacksonsville v. FDIC*, 710 F.2d 1528, 1536 (11th Cir. 1983). 'In considering judicial estoppel for bankruptcy cases, the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the

12

> debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.' *Barger v. City of Cartersville*, 348 F.3d 1289, 1295-96 (11th Cir. 2003).

The Chapter 13 debtor in *Robinson* argued that she had no motive to conceal the unlisted cause of action because she paid creditors through her plan in full. The Eleventh Circuit rejected this argument finding that motive to conceal stems from the possibility of defrauding the courts <u>not</u> from the actual fraudulent result. The Court has no trouble finding that the debtor had a motive to conceal the lawsuit filed in state court in this case while this bankruptcy case was and still is pending. Clearly, the debtor was attempting to pursue this lawsuit for his own benefit and not for the benefit of his creditors. The debtor has been a debtor in this Court since 2007 and has been involved in numerous lawsuits and contested matters before this Court. The debtor has amended his schedules four times. Indeed in the fourth and final amendment, the debtor amended his schedules to list a potential cause of action against an unrelated party. Clearly, the debtor knew how to disclose a potential cause of action but choose not to do so in this instance, preferring to maintain same for his own benefit. Accordingly, the Court finds that the defendants have satisfied both elements of judicial estoppel and finds that all prepetition claims asserted by the debtor in this lawsuit are barred by the doctrine of judicial estoppel.

The Court finds that judicial estoppel operates to bar the debtor's prepetition claims despite any interest the debtor's Chapter 7 trustee might have in the claims pursuant to *Pavlov v. Ingles Markets, Inc.,* 236 Fed.Appx. 549 (11th Cir. 2007)(unpublished opinion). In *Pavlov*, the Eleventh Circuit found that the district court correctly determined that judicial

13

estoppel could be applied against the debtor's claims despite any interest of the trustee where the trustee had not made an appearance in the case through intervention. This case has been pending since December of 2009 and while the trustee has not officially abandoned any of the prepetition claims the trustee has also not sought to intervene in this case. While the Eleventh Circuit's unpublished opinion in *Pavlov* is not binding authority, it is persuasive authority and the Court will follow same. Accordingly, the Court finds that all of the debtor's prepetition claims against LCTCU, the director defendants, and Morton are barred by judicial estoppel.

**B. The Court will exercise abstention with respect to the debtor's postpetition causes of action against LCTCU, the director defendants, and Morton pursuant to 28 U.S.C. § 1334(c).**

With regard to the debtor's postpetition causes of action based on malicious prosecution and wanton conduct, the Court will abstain and remand those claims back to the Circuit Court of Lauderdale County, Alabama. In <u>MJO Holding Corp. v. Welt (In re Happy Hocker Pawn Shop, Inc.)</u>, 212 Fed. Appx. 811 (11th Cir. 2006), the Eleventh Circuit explained that bankruptcy courts exercise jurisdiction in three categories of civil proceedings:

(1) those that "arise under title 11,"

(2) those that "arise in cases under title 11," and

(3) those "related to cases under title 11," 28 U.S.C. § 1334(b).

14

Section 157(b)(1) of Title 28 categorizes proceedings that arise under title 11, or that arise in a case under title 11 as "core proceedings." The Eleventh Circuit has adopted the Fifth Circuit test for determining § 157(b) jurisdiction:

> "[if] the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy **because of its potential effect**, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding." (emphasis added).

In this case, the Court questions whether the debtor's postpetition claims are even "related to" the debtor's bankruptcy proceeding as any recovery will only benefit the debtor as the debtor's postpetition claims are not property of the estate. Accordingly, at most debtor's postpetition claims are non-core matters.

Abstention is governed by 28 U.S.C. § 1334(c), which provides:

> (1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with state courts or respect for state law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
>
> (2) Upon timely motion of a party in a proceeding based upon a state law claim or state law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.

15

Section 1334(c)(2) addresses situations where the court must abstain, and pertains only to non-core proceedings, whereas § 1334(c)(1) allows for permissive abstention from core matters when abstention best serves the interest of justice, judicial economy, or respect for state law.[9] Having determined that the debtor's postpetition claims against LCTCU, the director defendants, and Morton are at most non-core, the Court must determine whether mandatory abstention applies under § 1334(c)(2). Under § 1334(c)(2), a bankruptcy court must abstain if:

> (1) a timely motion to abstain is filed;
>
> (2) the proceeding is based upon a state law claim or state law cause of action;
>
> (3) the proceeding is related to a case under title 11 but not arising under title 11 or arising in a case under title 11;
>
> (4) the proceeding could not have been commenced in a court of the United States absent jurisdiction under § 1334; and
>
> (5) the proceeding is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.[10]

Here the Court finds that the elements for mandatory abstention apply: (1) the motion for abstention filed on January 21, 2010 was timely; (2) the debtor's postpetition claims for malicious prosecution and wantonness are based on state law claims; (3) the actions were commenced in state court; (4) the state court actions can be timely adjudicated by the

---

[9] *Raven II Holdings v. W.S.F. -World Sports Fans, LLC (In re W.S.F. World Sports Fans, LLC)*, 367 B.R. 786 (Bankr. D.N.M. 2007).

[10] *Twyman v. Wedlo, Inc. (In re Wedlo, Inc.)*, 204 B.R. 1006, 1018-1019 (Bankr. N.D. Ala. 1996).

16

respective state court, as there is no evidence indicating that there is some impediment or known cause to delay the proceedings in the state court actions; and (5) there is no independent basis for federal jurisdiction other than the bankruptcy.[11]  Alternatively, the Court finds that the Court does not have subject matter jurisdiction over the postpetition claims and remands same.

### C. All claims against the purchaser defendants are due to be dismissed because the defendants' rights, title and interests in the property are protected by their bona fide purchaser status under state law.

After LCTCU obtained relief from the stay from this Court to proceed against the debtor's real property under the laws of the State of Alabama, LCTCU exercised its rights under state law to foreclose its interest in the debtor's real property.  LCTCU was the high bidder at most if not all of the foreclosure sales.   Subsequently, LCTCU proceeded to sell the foreclosed property and conveyed same to the various purchaser defendants by statutory warranty deeds.

The debtor seeks a declaration that the deeds LCTCU executed in favor of the purchaser defendants are void on the grounds that the debtor's mortgage in favor of LCTCU was procured by a scheme of fraud, theft and extortion.  The debtor admits, however, that the purchaser defendants were "innocent purchasers" who were "victimized by Defendants because they are now unwittingly in possession of stolen property."[12]

---

[11]  *In re Robino*, 243 B.R. 472, 492 (Bankr. N.D. Ala. 1999); *Twyman v. Wedlo, Inc. (In re Wedlo, Inc.)*, 204 B.R. 1006 (Bankr. N.D. Ala. 1996).

[12]  Debtor's Second Amended Complaint, ¶ 583 and ¶ 585.

17

"A bona fide purchaser is one who (1) purchases legal title, (2) in good faith, (3) for adequate consideration, (4) without notice of any claim of interest in the property by any other party."[13]  The Supreme Court of Alabama has held that "purchasers at foreclosure sales 'have been treated as bona fide purchasers for value, and protected against secret claims or equities, whether existing in favor of third persons against the mortgagor, or in favor of the mortgagor . . . against the mortgagee;' and 'the mortgage appearing of record to be valid, a purchaser without notice does acquire title."[14]

It is clear from the debtor's second amended complaint that none of the purchasers had notice that there were any potential claims relating to the mortgages between the debtor and LCTCU.  The mortgages were valid instruments on their face and LCTCU foreclosed same after receiving relief from this Court to proceed with its state law remedies against the debtor's property.  Accordingly, the Court finds that the debtor's claims against the purchaser defendants are due to be dismissed as the defendants are protected by their bona fide purchaser status under state law.

## CONCLUSION

For all these reasons, this Court dismisses with prejudice all of the debtor's prepetition claims under Federal Rule of Civil Procedure 12(b)(6) against LCTCU, the director defendants, and Morton and all of the debtor's claims against the purchaser defendants.  The

---

[13]  *Rolling "R" Construction, Inc. v. Dodd*, 477 So.2d 330 (Ala. 1985).

[14]  *Fleming v. Watson,* 416 S.2d 706, 709 (Ala. 1982).

18

Court further abstains from determining the debtor's postpetition claims against LCTCU, the director defendants, and Morton and will enter a separate order consistent with this opinion remanding same.

**DONE and ORDERED** this date: April 26, 2010.

/s/   Jack Caddell
Jack Caddell
United States Bankruptcy Judge


JAC/mhb
xc:   Debtor(s)
      Keith Pope, attorney for plaintiff(s)
      Russell W. Crumbley, attorney for plaintiffs
      Larry B. Moore, attorney for Steve Morton, Jr.
      Robert Tapscot, attorney for LCTCU and Director Defendants
      Jeremy L. Retherford, attorney for Gary W. Bentley
      Jesse P. Evans, III, attorney for Pounders & Associates, XI, LLC
      Thomas J. Skinner, IV, attorney for Mike Thornton
      Tazewell Shepard, trustee
      defendants